**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MARC WYATT** | § | |
| | § | |
| **V.** | § | **A-17-CV-00122-SS** |
| | § | |
| **LORIE DAVIS** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE SAM SPARKS
        SENIOR UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates. Petitioner, Marc Wyatt, is pro se in this matter and was granted leave to proceed *in forma pauperis*. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 12), and Petitioner's Reply (ECF No. 15). For the reasons set forth below, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus be **denied**.

## STATEMENT OF THE CASE

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence imposed by the 21st Judicial District Court of Lee County, Texas. Petitioner was found guilty of criminal mischief affecting property valued between $20,000 and $100,000, as a habitual offender, and sentenced to a term of 80 years' imprisonment.

## A.     Factual Background

The following summation of the testimony presented at Petitioner's trial is taken from Respondent's Answer:

> . . . [T]he manager of the Tractor Supply Company store in Giddings, Texas, testified that the five air conditioning units on the top of his store were operating properly when he left work on the evening of April 25, 2012. The building's alarm system, which also monitored the air conditioning, alerted him at 1:04 a.m. on April 26 that there was a problem, so he requested a service call to be arranged.

> Early in the morning, [the manager] arrived at the store and observed that the air conditioning units were running and blowing air, but not cooling properly, so he again requested a service call. When he was coming back from lunch around 3:00 p.m., he noticed that the building's air conditioning units appeared to have been tampered with because the metal and tin on the units was torn back or missing. [The manager] went to view the roof and observed the sheet metal around the units had been removed or bent back, and that the units were damaged and had missing parts. He called the Giddings Police Department whose officers . . . accompanied him to the roof, where they noticed there were foot marks on the wall near a pipe that ran up the side of the building. There were also foot prints on the roof and drag marks, along with screws and sheet metal. Ultimately, the landlord who owned the building at the time had to completely replace the units.

> [Two police officers], along with Detective Steve Spencer, all went up to the roof and provided testimony consistent with the details of the scene provided by [the manager]. They noted that the aluminum coils and copper tubing in the units was taken, and they photographed the scene, including the shoe impressions and the imprint of the back pocket area of a pair of jeans that was found in the rubber roofing material.

> Officer [] Griffin was a patrol sergeant on duty near the Tractor Supply store the night the incident occurred. Using his patrol car camera, he recorded a truck parked at a nearby business at 2:36 a.m. . . . Officer Griffin observed the truck appeared empty . . . Inside the vehicle there were various power tools. At a department meeting on April 26, Officer Griffin learned about the damage to the air conditioning units at the Tractor Supply store, and informed a detective about the truck [].

> Detective Spencer began investigating the truck noticed by Officer Griffin, which he determined Wyatt owned. Then he checked the State's database of metal transactions, where he discovered that Wyatt had previously sold aluminum, copper, and maybe some brass, but had no transactions listed for April 26. A little over a week later, Detective Spencer checked the database again and found that Wyatt had sold

aluminum on the morning of April 26 using the same truck Officer Griffin investigated. After obtaining photos of the metal sold and speaking [to] the distributor of the air conditioning units about what exactly was taken, Detective Spencer believed the metal Wyatt sold was consistent with what was stolen.

Detective Spencer then obtained an arrest warrant for Wyatt, and [eventually located him]. In a videotaped interview, Wyatt claimed his truck was parked nearby [the Tractor Supply Company store in Giddings] because he ran out of gas and had walked to the Buc-ee's store to buy some more.

Detective Spencer also obtained a pair of jeans and a pair of shoes belonging to Wyatt from Elisa Garza's residence. Elisa Garza, Wyatt's girlfriend at the time of the incident, testified about how she gave a bag containing some of Wyatt's belongings, including a pair of jeans and a pair of shoes to police. Spencer compared Wyatt's shoes with the shoe prints from the scene and believed they matched. He also compared the back of the jeans recovered to [a] print from the scene and thought they were consistent. Detective Spencer submitted the photos of the shoe prints along with the shoes taken from the residence to the crime lab.

[The manager] of the Buc-ee's that Wyatt claimed he went to find gas at, testified that she and Giddings Police Captain Earl Pence reviewed the security video footage for all the gas pumps and the store from the night of the crime. She did not see anyone walk up to buy gas at a pump or the inside register. She also found no record of any credit card transaction at any of the pumps. Captain Pence also testified that he did not observe any walk up customers.

Cleofas Salas worked for Commercial Metals in Austin, a company that buys and recycles metals like copper and aluminum. To comply with state regulations, the company kept and reported to the State detailed records of each transaction involving copper, aluminum, or brass, including photos of each seller, the metals sold, the sellers' driver's licenses, and the sellers' vehicles.

According to Salas, Wyatt sold the company some aluminum and copper at 9:13 a.m. on April 26, 2012. The photograph of Wyatt's vehicle matched the truck observed by Officer Griffin in Giddings just hours before. The records showed that Wyatt sold them 326 pounds of aluminum and 21 pounds of copper, for which he was paid $230.05. Salas testified the metals Wyatt sold came from air conditioning units.

Mike Stephens worked for Johnson Controls, the company that built the air conditioning units used at the Tractor Supply store. He stated that the cost of air conditioning units was around $22,000 to $24,000. Based on his knowledge of the industry and the rarity of the taken coils, Stephens believed the metals Wyatt sold were from Tractor Supply's air conditioning units. He also noted the weight of the metals taken from the units closely mirrored what Wyatt sold.

[A] forensic scientist at the Texas Department of Public Safety crime lab who did the shoe print analysis using Wyatt's shoes and the photos of the prints taken for the roof of Tractor Supply . . . determined that some of the shoe prints on the roof could have been made by Wyatt's shoes or any other shoe with a similar tread design.

(ECF No. 12 at 6-11) (internal citations omitted).

Additionally, the following facts were found by the Third Court of Appeals:

[The] manager of the Tractor Supply store [] testified that the building serviced by the air-conditioning units was newly constructed . . . approximately 18 months before the units were destroyed. Mike Stephens, sales manager for the vendor who provided both the original and replacement air-conditioning units, testified that the damaged units utilized the newest technology . . . and that this type of technology first became available near the time the Tractor Supply building was constructed. According to Stephens, the units were very expensive, the price charged for the damaged units was between $22,000 and $24,000, and the acquisition price reflected a discount . . . [A]n employee of Bingham Construction . . . testified that at the time the air-conditioning units were destroyed, they "were in perfect operating condition" and "[b]asically new units still." [He] further testified that his company paid $28,500 for the replacement units, which was the "usual and customary" price, and $5,700 for installation . . .

*Wyatt v. State*, No. 03-13-00307-CR, 2014 WL 7475488, at *2 (Tex. App.– Austin 2014, pet. ref'd).

## B.    State Criminal Proceedings

A grand jury indictment returned June 8, 2012, charged Petitioner with one count of knowingly damaging or destroying tangible property causing pecuniary loss of more than $20,000 but less than $100,000. (ECF No. 13-25 at 123-24). The indictment further alleged Petitioner had previous convictions for felony theft and burglary of a habitation. *Id.* Petitioner appeared with counsel at a pretrial hearing on April 11, 2013. (ECF No. 13-4 at 4-6). At the hearing the State proffered a plea offer of 20 years' imprisonment, which Petitioner rejected. (ECF No. 13-4 at 7-8).

Petitioner did not testify at his trial. (ECF No. 1 at 3). Petitioner's counsel moved for a directed verdict at the close of the State's case, which motion was denied. (ECF No. 13-7 at 167). After deliberating for approximately an hour and a half, the jury found Petitioner guilty as charged.

(ECF No. 13-26 at 83-84, 89-90). Petitioner pleaded true to the indictment's enhancement allegations and the jury was instructed to assess punishment at a term of no less than 25 years nor more than 99 years' imprisonment. (ECF No. 13-26 at 85-86). The jury assessed punishment at a term of 80 years' imprisonment and a fine of $5,000. (ECF No. 13-26 at 90). Petitioner was also ordered to pay the sum of $40,995.61 in restitution. (ECF No. 13-26 at 99).

Petitioner's trial counsel withdrew, and appellate counsel was appointed. (ECF No. 13-26 at 95). In his appeal Petitioner argued there was insufficient evidence to support the finding that the value of the relevant property was in excess of $20,000. Petitioner argued:

> In the case at bar, the fair market value of the used air-conditioning units found to have been destroyed by Appellant was critical to the level of offense established against him, and to the penalty range to which he is now exposed.
> The State had an affirmative duty to prove that the amount of pecuniary damage exceeded $20,000; otherwise Appellant's enhanced habitual offender status cannot be established, and the 80-year verdict should not stand. . . .

(ECF No. 13-16 at 19). The appellate court denied relief, *Wyatt*, 2014 WL 7475488, at *1 & *3, and the Court of Criminal Appeals denied a petition for discretionary review. (ECF No. 13-1).

Petitioner filed an application for a state writ of habeas corpus, alleging forty claims for relief, (ECF No. 13-25 at 6-130), which was denied without written order. (ECF No. 13-24).

## C.    Petitioner's Grounds for Relief

Petitioner asserts 41 distinct claims for relief, including claims of ineffective assistance of trial and appellate counsel; violation of the Fourth Amendment, his *Faretta* rights, and the *Youngblood* and *Brady* doctrines; insufficiency of the evidence with regard to the value of the lost property; denial of his right to due process of law; and a claim of actual innocence.

## ANALYSIS

### A.     Exhaustion and Procedural Default

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts lack the power to grant habeas corpus relief on an unexhausted claim. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003). To exhaust his state remedies, a petitioner must present his claims to the state's highest court in a procedurally correct manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Texas, the highest state court with jurisdiction to review the validity of a state criminal conviction is the Court of Criminal Appeals. *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001). To properly exhaust a claim the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. O'Connor*, 404 U.S. 270, 276 (1971). Claims are not exhausted "if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

Petitioner is unable to return to state court to present any unexhausted federal habeas claims, because he would be procedurally barred by Texas' abuse of the writ doctrine. *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998). If a petitioner failed to properly exhaust all his available state remedies and the state court to which he would be required to bring his claims to exhaust them would now find the claims procedurally barred, the claims are deemed exhausted but procedurally defaulted. *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999). Federal habeas relief is barred on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice arising from the default, or demonstrate the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, a petitioner must show some external force impeded his efforts to comply with the state's

procedural rule regarding proper presentment of the claims in the state courts. *Id.* at 753. To demonstrate prejudice, a petitioner must show the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (internal quotations omitted). To establish a fundamental miscarriage of justice, a petitioner must make a "persuasive showing" he is factually innocent. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

## B. Standard of Review of Properly Exhausted Claims

Section 2254(d) permits the granting of federal habeas relief when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; when the state court's decision involved an "unreasonable application" of such law; or when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted). Where, as here, the state-court's denial of a petitioner's claims is unexplained, a federal habeas court reviews the state court's "ultimate decision" for reasonableness. *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018), *cert. denied,* 2018 WL 4600003 (Nov. 19, 2018) (No. 18-380). The

federal habeas court "must hypothesize the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent. The decision is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry," the federal habeas court determines there was no reasonable basis for the decision. *Id.* (internal citations omitted).

### C.     Standard of Review of Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show counsel's representation fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument or if counsel fails to assert a frivolous objection. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009).

### D.     Petitioner's Procedurally Defaulted Claims

In his 19th claim for relief Petitioner asserts a claim of prosecutorial misconduct based on the prosecutor's use of hypotheticals during jury selection; in his state habeas action Petitioner asserted these facts in support of an ineffective assistance of counsel claim. (ECF No. 1 at 12; ECF No. 13-25 at 35). In his 32nd claim for relief Petitioner argues his appellate counsel was ineffective

for failing to challenge the trial court's ruling limiting defense counsel's cross-examination of Officer Griffin; in state court Petitioner asserted the ruling was an abuse of discretion. (ECF No. 1 at 17; ECF No. 13-25 at 56). In his 34th habeas claim Petitioner asserts appellate counsel failed to argue his conviction must be reversed because the jury saw Petitioner in restraints, but in the state court he argued these facts supported an ineffective assistance of trial counsel claim. (ECF No. 1 at 18; ECF No. 13-25 at 62). Because these federal habeas claims are all based on a legal theory distinct from the legal theory relied upon in the state court, the claims are unexhausted. *Picard*, 404 U.S. at 276; *Wilder*, 274 F.3d at 259. Furthermore, Petitioner's 17th and 38th habeas claims were not raised in his state court proceedings in any form and, therefore, they are unexhausted.

Because Texas's abuse of the writ doctrine precludes any further proceedings in the state courts, all of Petitioner's unexhausted claims have been procedurally defaulted. Petitioner fails to show cause and actual prejudice for his procedural default of these claims, and he makes no showing that a failure to address the merits of the claims would result in a fundamental miscarriage of justice. Accordingly, habeas relief on these claims is precluded.

### E. Merits of Exhausted Claims

### 1. Appointment of counsel

Petitioner alleges he was denied the timely appointment of counsel, citing *Rothgery v. Gillespie County, Texas*, 554 U.S. 191 (2008); he argues this caused the loss of exculpatory evidence, i.e., the surveillance video from Buc-ee's, which he alleges would have corroborated his "alibi." (ECF No. 1 at 6; ECF No. 15 at 1-2). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 15), and the claim was denied.

In his state habeas application, Petitioner averred:

Petitioner was arrested on May 15, 2012. Petitioner was magistrated on [May] 17, 2012. At this time, petitioner informed the judge that he was in need of legal counsel so that evidence could be presented. . . . Petitioner was transferred to Bastrop County to face unrelated charges. Petitioner made a request to represent himself. The presiding judge asked if petitioner had an attorney for the Lee County charge. Petitioner stated "No, I would like to represent myself." The judge stated "Thats (sic) not going to happen" and pointed to Lawrence Dunne III and stated "Thats your attorney right there." This "appointment" [occurred] on August 3, 2012.

(ECF No. 13-25 at 15). Contrary to these statements, in his federal habeas petition Petitioner asserts he was not appointed counsel until October 3, 2012. (ECF No. 1 at 6).

The Sixth Amendment protects the rights of the "accused" in "all criminal prosecutions." In *Rothgery*, the Supreme Court reconsidered the question of exactly when the Sixth Amendment right to counsel "attaches." The Supreme Court determined a Texas defendant's "article 15.17 hearing" triggers the defendant's right to counsel. *Rothgery,* 554 U.S. 191 at 207-13. There is no indication in the state court record docketed in this matter as to exactly when counsel was appointed. A "Magistrate's Form" indicates that, on May 16, 2012, Petitioner was informed of the charge against him, was advised of his right to the appointment of counsel and provided a form to request appointment of counsel, and Petitioner requested appointment of counsel. (ECF No. 13-2 at 14). Based on this record,[1] the Texas Court of Criminal Appeals could reasonably conclude Petitioner was appointed counsel on May 16, 2012, the day Petitioner's article 15.17 hearing was conducted, when he requested the appointment of counsel.

---

[1] A federal habeas court's review of a petitioner's claims is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011); *Register v. Thaler*, 681 F.3d 623, 627 (5th Cir. 2012).

Petitioner fails to show any critical events regarding the Lee County proceedings were held before the appointment of counsel, or that the timing of counsel's appointment impeded counsel's investigation. At trial, Petitioner's counsel exhibited a command of the facts and law regarding Petitioner's case, and he effectively cross-examined all of the State's witnesses, particularly those testifying about the Buc-ee's videotape. There is no evidence counsel did not offer adequate representation at the critical stage of gathering evidence. Additionally, the Buc-ee's videotape was not exculpatory. The general manager testified she watched the surveillance video from the early morning hours of April 26, 2012, and that she "did not see anybody walking up in any of the cameras." (ECF No. 13-6 at 228-32). She further testified no one had paid at the pump with a credit card during the time in question. (ECF No. 13-6 at 232). Captain Pence testified he viewed the surveillance video. (ECF No. 13-7 at 47). He testified: "[W]e went through probably a couple of hours of video . . . and we never saw anything of Mr. Wyatt or his truck in the parking lot, nor inside the store." *Id.* Captain Pence testified he did not get a copy of the video because "[t]here was nothing on the video. . . . We didn't see our suspect or his vehicle in their video, so I didn't see any need to have a recording of five hours of nothing." *Id.*

Petitioner bears the burden of proof in this habeas action. *Cullen*, 563 U.S. at 181; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Petitioner also carries the burden of showing there was "no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Petitioner has failed to show he was not afforded counsel at a "critical stage" of his proceedings. Therefore, the state court's denial of this claim was not clearly contrary to federal law.

### 2. Ineffective assistance of counsel – Alleged plea offer of probation

Petitioner asserts trial counsel was ineffective because he did not inform Petitioner the State had offered a term of probation as part of a plea agreement. (ECF No. 15 at 3). Petitioner quotes the state trial record where, in response to the prosecutor's inquiry "'Y'all going to ask for probation?' defense counsel responded: 'Not probation eligible. I'm not going to waste the Court's time. . . .'" (ECF No. 15 at 3, quoting ECF No. 13-5 at 11). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 13), and relief was denied. The context of defense counsel's comment shows counsel was not discussing a plea offer. After discussing Petitioner's election to have the jury assess punishment, defense counsel stated he was not going to ask for probation because Petitioner was ineligible. (ECF No. 13-5 at 10-11). Thus, the comment quoted by Petitioner in support of this claim refers to whether counsel intended to ask the jury to assess a punishment of probation, which was legally prohibited. Petitioner has not shown his counsel failed to inform him of a plea offer and the record establishes an agreement providing for probation was never offered; accordingly, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

### 3. Ineffective assistance of counsel – Lesser-included offense instructions

Petitioner alleges counsel was ineffective for failing to request a lesser-included offense instruction on theft or criminal mischief with a loss of $1,500 to $20,000. (ECF No. 1 at 7). Petitioner presented this claim in his state habeas action, (ECF No. 13-25 at 23), and the state court denied the claim. Defense counsel argued to the jury that there was insufficient evidence to find Petitioner was the individual who vandalized the units. (ECF No. 13-7 at 176-92). Accordingly, the alleged failure to request a lesser-included offense instruction could be considered an reasonable strategic decision to present the jury with an "all or nothing" choice on conviction, rather than

deficient performance. *Mejia*, 906 F.3d at 316-17. Furthermore, the appellate court found the evidence sufficient to establish the value of the stolen property was more than $20,000. *Wyatt*, 2014 WL 7475488, at *2. Therefore, there is no reasonable probability the jury would have found Petitioner guilty of the lesser offense had counsel sought and been awarded a lesser-included offense instruction. Because Petitioner has not established that his counsel's performance was deficient or that he was prejudiced by the alleged error, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

### 4. Ineffective assistance of counsel – Expert witness

Petitioner contends his trial counsel should have called an expert in air conditioning units to testify "that the units in their [vandalized] condition were not destroyed, but simply damaged." (ECF No. 1 at 7). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 26), and relief was denied. The alleged failure to secure an expert does not constitute ineffective assistance of counsel because testimonial evidence is a matter of trial strategy. *del Toro v. Quarterman*, 498 F.3d 486, 490-91 (5th Cir. 2007). To prevail on this claim, Petitioner must name the proposed expert witness, "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Petitioner has not made the requisite showing to succeed on this claim. Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 5. Fourth Amendment

Petitioner claims the police conducted an unconstitutional search and seizure by implying they would arrest Ms. Garza if she did not consent to a search of her residence. (ECF No. 1 at 8). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 19), and relief was denied. A habeas petitioner asserting a Fourth Amendment violation is not eligible for relief if they had a full and fair opportunity to litigate a Fourth Amendment claim in the state courts. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). Because Petitioner had the opportunity to litigate his Fourth Amendment claims in the state courts, he is not entitled to federal habeas relief on this claim.

### 6. False evidence

Petitioner alleges the prosecution knowingly used false evidence, by introducing a pair of pants they knew did not belong to Petitioner as evidence against him. (ECF No. 1at 8). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 21), and relief was denied. To prove a due process violation based on allegedly falsified evidence, a petitioner must demonstrate the evidence in question was actually false, the prosecutor was aware of the falsity, and the evidence was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). "False evidence is material only if there is any *reasonable likelihood* that [it] could have affected the jury's verdict." *Goodwin v. Johnson*, 132 F.3d 162, 185 (5th Cir. 1997) (internal quotations omitted and emphasis added). During defense counsel's cross-examination of Detective Spence, counsel elicited testimony that the pants retrieved from Ms. Garza's residence were *inconsistent* with the pattern left in the roofing material at the scene of the crime. (ECF No. 13-7 at 11). Because the evidence was of little inculpatory value, there is no reasonable likelihood the evidence affected the jury's verdict. Petitioner fails to show the state court's denial of this claim was based on an unreasonable

determination of the facts of his case, or that the outcome was contrary to, or an unreasonable application of Supreme Court law.

### 7. *Faretta* claim

Petitioner contends he was denied his right to self-representation. (ECF No. 15 at 6). Petitioner asserted this claim in his state habeas action, (ECF No. 13-25 at 22), and the claim was denied. A criminal defendant has a Sixth Amendment right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 807 (1975). The invocation of the right of self-representation must be clear, unequivocal, and timely. *Id.* at 835. Additionally, "the right may be waived through [the] defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982). Petitioner's conduct indicates he abandoned any clear or unequivocal request for self-representation. Notably, at a pretrial hearing on April 11, 2013, Petitioner appeared with counsel, who argued several pretrial motions. (ECF No. 13-4 at 4-6). At that time, defense counsel noted Petitioner had been offered a plea deal and Petitioner stated that he wished to proceed to trial. (ECF No. 13-4 at 7-8). Petitioner did not indicate that he was unhappy with his attorney's representation or that he wished to proceed to trial without counsel. The state court's rejection of Petitioner's *Faretta* claim was not an unreasonable application of federal law because the state court could reasonably have found Petitioner abandoned any invocation of *Faretta* by acquiescing to counsel's representation during the pretrial proceedings and at trial. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Lefevre v. Cain*, 586 F.3d 349, 355-56 (5th Cir. 2009); *Brown*, 665 F.2d at 611.

### 8. Ineffective assistance of counsel – Pretrial hearing

Petitioner alleges counsel was ineffective for failing to request a pretrial evidentiary hearing to exclude evidence, i.e., the pants recovered from Ms. Garza's residence, the Tractor Supply manager's testimony, and the evidence of the shoe prints. (ECF No. 1 at 9). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 24), and relief was denied. In denying habeas relief on this claim the Court of Criminal Appeals impliedly concluded counsel's performance was neither deficient nor prejudicial because, pursuant to state law, the evidence was admissible. A state appellate court's determinations of state law, such as the admissibility of evidence, are binding on a federal habeas court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Because Petitioner has not shown deficient performance or prejudice, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

### 9. Ineffective assistance of counsel – Independent forensics testing

Petitioner asserts trial counsel was ineffective for failing to request independent testing of the pants and shoes seized from Ms. Garza's residence. (ECF No. 1 at 9). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 25), and relief was denied. There is no reasonable probability the alleged failure to seek additional forensics testing was prejudicial. Defense counsel was able to undermine the validity of the evidence regarding the shoes and the pants through the testimony of Detective Spencer and the State's forensics expert. (ECF No. 13-7 at 11, 163-65). Because Petitioner has not established prejudice arising from this apparently strategic decision by counsel, the state court's denial of relief on this claim was not an unreasonable application of *Strickland*.

**10. Denial of motion for a directed verdict**

Petitioner argues the trial court abused its discretion by denying his motion for a directed verdict, arguing a State's witness's testimony established the air conditioning units were damaged rather than destroyed. (ECF No. 1 at 9). Petitioner contends that, if the units were only damaged, the resulting pecuniary loss was insufficient to find him guilty of a second-degree felony. Petitioner raised this claim in his state habeas action, (ECF No. 13025 at 27), and the claim was denied.

A claim of trial court error in failing to grant a motion for a directed verdict is merely another way of alleging the evidence was insufficient to support the verdict. *Gatrell v. Lynaugh*, 833 F.2d 527 (5th Cir. 1987). Petitioner's conviction for a second-degree felony and his exposure to a substantially longer sentence depended on a finding that the owner of the air-conditioning units sustained a loss of more than $20,000, either by damage or destruction of the units. "[I]f the jury charge authorizes the jury to convict the defendant on more than one theory [i.e., either damage or destruction] . . . the verdict of guilt will be upheld if the evidence was sufficient on any theory authorized by the jury charge." *Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014). In this matter the jury was allowed to find Petitioner guilty based on evidence he damaged *or* destroyed the air conditioning units. (ECF No. 13-26 at 78-80). The Third Court of Appeals found the evidence sufficient to establish the pecuniary loss, pursuant to state law. The interpretation of state law by a state appellate court is entitled to deference by this Court. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Petitioner's allegation that the units were damaged, rather than destroyed, underpins several of his federal habeas claims: that counsel was ineffective for failing to investigate the insurance claim (ECF No. 15 at 12); that there was insufficient evidence of loss (ECF No. 1 at 13); that there

was insufficient evidence the units were destroyed (*id.*); and that counsel was ineffective for failing to challenge the amount of loss to the owner (ECF No. 1 at 14). All of these claims may be denied because the state appellate court concluded, as a matter of fact and as a matter of state law, that the evidence of pecuniary loss was sufficient and admissible, pursuant to state law, to support Petitioner's conviction for a second degree felony.

**11. Lost receipts**

Petitioner alleges Detective Spencer lost receipts proving Petitioner bought the coils sold in Austin from "private persons." Petitioner asserts losing the receipts violated his right to a fundamentally fair criminal proceeding. (ECF No. 1 at 9-10). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 28), and relief was denied.

To be entitled to relief on a claim of lost evidence, the exculpatory value of the evidence must be apparent before the evidence was destroyed. *California v. Trombetta*, 467 U.S. 479, 489 (1984). If the exculpatory value of the receipts was in question, the failure of law enforcement to preserve the evidence does not violate the Due Process Clause absent a showing of bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). Petitioner makes no showing the receipts were exculpatory. Petitioner does not explain why, if the materials sold in Austin on the morning of the crime were purchased from a "private person," his truck was empty of these materials several hours before he arrived at the Austin recycling center. It is highly unlikely Petitioner paid for the materials before April 26, but did not retrieve them until some time between 2:30 a.m., when his empty truck was in Giddings, and 9 a.m., when he sold the materials in Austin. Furthermore, Petitioner makes no showing of bad faith. Detective Spencer testified he received "some receipts" from Petitioner's sister and these receipts were later lost. (ECF No. 13-7 at 11-12). Detective Spence testified the receipts

were from a recycling center, documenting transactions prior to the date of the theft at the Tractor Supply. (ECF No. 13-7 at 11-12, 16). Petitioner offers no evidence rebutting Detective Spence's testimony. Because the state court's denial of this claim was not contrary to or an unreasonable application of federal law, Petitioner is not entitled to relief on this claim.

### 12. Chain of custody

Petitioner contends the State violated his rights by introducing the evidence of his shoes without establishing the chain of custody. (ECF No. 15 at 10). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 29), and relief was denied. Habeas relief may not be granted for violations of state law, such as the admission of evidence implicating the "chain of custody," unless they are so egregious as to render the entire trial fundamentally unfair. *Thomas v. Lynaugh*, 812 F.2d 225, 230-31 (5th Cir. 1987). "A break in the chain of custody simply goes to the weight of the evidence, not its admissibility." *Shields v. Dretke*, 122 F. App'x 133, 149-50 (5th Cir. 2005) (internal quotations omitted); *see also Lockhart v. McCotter*, 782 F.2d 1275, 1280-81 (5th Cir. 1986). Because counsel raised the chain of custody issue before the jury and the evidence was not dispositive of Petitioner's guilt, he has not established any error rendered his entire trial fundamentally unfair and he is not entitled to relief on this claim.

### 13. "Altered evidence"

Petitioner asserts evidence, i.e., a photograph of the shoe prints on the roof of the Tractor Supply, was altered. (ECF No. 1 at 10-11). Petitioner alleges the evidence was "altered" because the State's analyst testified she altered the size of the image of the shoe prints. (ECF No. 1 at 10-11). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 30), and relief was denied. The admission of evidence violates a defendant's right to due process if the evidence had a

substantial and injurious effect on the jury's verdict. *See, e.g.*, *Bigby v. Dretke*, 402 F.3d 551, 563-64 (5th Cir. 2005). The expert's testimony that the prints were consistent with Petitioner's shoes was based on the pattern of the tread on the bottom of the shoe, rather than the size of the shoe, and defense counsel elicited testimony that the shoe's pattern did not match the pattern found on the roof of the Tractor Supply. (ECF No. 13-7 at 163-65). Accordingly, it is unlikely the evidence had a substantial effect on the jury's verdict, and the state court's decision denying relief on this claim was clearly contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts before the state court.

### 14. Surveillance video

In his fourteenth claim for relief Petitioner contends the State "failed to properly preserve exculpatory evidence" by failing preserve the Buc-ee's surveillance videotape. (ECF No. 1 at 11). In his fifteenth claim for relief Petitioner asserts the State "failed to disclose" this allegedly exculpatory evidence. (ECF No. 1 at 11; ECF No. 15 at 11). Petitioner raised these claims in his state habeas action, (ECF No. 13-25 at 31), and relief was denied.

Captain Spence and the Buc-ee's manager both testified the video surveillance did not show Petitioner purchasing gasoline during the time in question. (ECF No. 13-6 at 232-33; ECF No. 13-7 at 45-50). Furthermore, even if the video showed Petitioner at the Buc-ee's at the time in question, this evidence was not necessarily material or exculpatory. A showing that Petitioner purchased gas would substantiate only Petitioner's claim he ran out of gas; it would not prove Petitioner did not remove the coils from the air conditioning units. The purported video evidence would not negate the evidence that Petitioner somehow acquired a rare type of air conditioning coil, matching those removed from the Tractor Supply, between 2:37 a.m., when his empty truck was observed in

Giddings, and 9 a.m., when he sold the materials in Austin. Because Petitioner has not established that the State possessed or withheld material, exculpatory evidence, the state court's denial of these claims was not an unreasonable application of federal law.

### 15. Ineffective assistance of counsel – Improper evidence at sentencing

Petitioner asserts the prosecutor referenced facts not in evidence during closing argument at sentencing, alleging defense counsel's performance was deficient because he did not object to these statements. (ECF No. 1 at 12).[2] Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 36), and relief was denied. In denying this claim the state habeas court presumably applied state law and determined that the statements were not improper, and reasonably concluded counsel's performance was not deficient for failing to raise a frivolous objection. Accordingly, the state appellate court's decision was not an unreasonable application of *Strickland* because counsel's alleged failure to raise a frivolous objection does not constitute ineffective assistance of counsel.

### 16. Ineffective assistance of counsel – Investigation of alibi

Petitioner asserts his trial counsel failed to investigate Petitioner's alibi, alleging his debit card records would prove he was in Austin at the time the air conditioning units were vandalized. (ECF No. 1 at 12). Petitioner raised this claim in the state court, (ECF No. 13-25 at 37), and relief

---

[2] Petitioner asserts:

    [The prosecutor] told the jury that petitioner obtained his license for air conditioning while he was incarcerated. [The prosecutor] knew this to be a false statement. [The prosecutor] knew that petitioner gained his license after his release from prison in September 2007. [The prosecutor's] sole reason for this statement was to inflame the jury.

. . .

    [The prosecutor] also stated that the petitioner did not come to shop Giddings, he came to steal Giddings. This statement implied that the petitioner was on trial for theft. No evidence at trial was offered as to theft. [The prosecutor]'s sole reason for this statement was to inflame the jury.

(ECF No. 1 at 12).

was denied. "[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). Whether counsel's investigation was reasonable depends in part on the information supplied by the defendant. *Id.* at 723. "[A]n attorney's proper tactical choice not to conduct an investigation should not be confused with a breach of the duty to investigate." *Rose v. Johnson*, 141 F. Supp. 2d 661, 692 (S.D. Tex. 2001). "Counsel . . . is not required to perform futile acts or embark on improvident investigations." *Id.* at 691. Furthermore, counsel's choice of a defense, such as the presentation of particular evidence and the choice of a defense, are strategic decisions which are "virtually unchallengeable." *Mejia*, 906 F.3d at 316-17; *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013); *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004).

Petitioner presents no clear and convincing evidence to rebut the state court's presumed finding that counsel's failure to investigate this alibi was deficient performance. Petitioner presumably had access to his own bank records and could have presented the state court with this evidence. Because the record indicates counsel thoroughly investigated Petitioner's case, the state court's denial of the claim was not an unreasonable application of *Strickland*.

### 17. Improperly withheld information and evidence

Petitioner alleges the State failed to disclose a bargain it made for the testimony of Ms. Garza and also alleges the State withheld a pair of black pants recovered from her residence. (ECF No. 1 at 13). Petitioner raised these claim in his state habeas action, (ECF No. 13-25 at 39, 43), and relief was denied. Petitioner offers only a conclusory allegation regarding the existence of any bargain for Ms. Garza's testimony and that the State withheld evidence. Conclusory allegations are insufficient

to establish a federal habeas claim and, therefore, Petitioner is not entitled to relief on these claims. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

### 18. Ineffective assistance of counsel – Investigation of Ms. Garza

Petitioner contends counsel failed to properly investigate Elisa Garza. Petitioner argues counsel should have discovered Ms. Garza had warrants for her arrest at the time of the "search," and that she consented to the search in return for an agreement that the warrants would not be executed. (ECF No. 15 at 18). Petitioner raised this claim in his state habeas action, and relief was denied. Petitioner's claim misrepresents the record, which indicates defense counsel did discover the warrants. Defense counsel elicited Ms. Garza's testimony that Detective Spencer knew of the outstanding warrants, which were for traffic violations, and that the detective did not arrest her or call local law enforcement to arrest her. (ECF No. 13-7 at 101-02). Additionally, Ms. Garza testified she voluntarily allowed Detective Spencer access to Petitioner's belongings. (ECF No. 13-7 at 100-01). Petitioner has not demonstrated counsel's performance was deficient or any resulting prejudice. Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 19. Restitution

Petitioner alleges the trial court erred by ordering him to pay restitution based on the replacement cost of the units, rather than the worth of the air conditioning units on the day of the crime. (ECF No. 1 at 15). Petitioner raised this claim in the state courts, (ECF No. 13-25 at 49), and relief was denied. The Fifth Circuit Court of Appeals has held, in the context of section 2255 proceedings involving federal prisoners, that habeas corpus is not the proper means to challenge restitution orders. *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999); *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994); *see also Mamone v. United States*, 559 F.3d 1209, 1209-12

(11th Cir. 2009) (holding a restitution order cannot be challenged in a section 2255 motion because a claim seeking discharge or reduction of a restitution order does not claim the right to be released from custody, even if it accompanies other claims that actually claim the right to be released from custody); *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015). The Circuit Courts of Appeal which have addressed the issue have denied relief on section 2254 claims challenging an order of restitution. *See Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009) (holding a claim challenging court-ordered restitution did not state a cognizable claim for federal habeas relief, because even if the petitioner's claim was meritorious, he would still be obligated to serve the prison term ordered by the state court); *Frye v. Medina*, 660 F. App'x 634, 636 (10th Cir. 2016); *Washington v. McQuiggen*, 529 F. App'x 766, 773 (6th Cir. 2013).

### 20. Ineffective assistance of trial counsel– Jury's "use" of parole laws

Petitioner contends counsel was ineffective for failing to object to the jury's use of parole laws when assessing his sentence. (ECF No. 1 at 15). Petitioner raised this claim in his state habeas action, (ECF No. 13-25 at 11), and relief was denied. Juries are presumed to follow instructions. *Galvan v. Cockrell*, 266 F.3d 760, 766 (5th Cir. 2002). Petitioner's jury was instructed to not consider parole laws as applied to Petitioner when assessing his sentence. (ECF No. 13-26 at 86-87). While the jury was deliberating as to punishment, it sent a note to the trial court asking: "What is the difference between 99 years and life? Will life bring eligibility for parole?" (ECF No. 13-8 at 27). In response, the trial court referred the jury to the charge. (ECF No. 13-8 at 28). By referring the jury back to the charge, the trial court instructed the jury to not consider application of the parole and good time laws on Petitioner's sentence. Accordingly, there is no evidence for the allegation that the jury improperly used parole law when assessing Petitioner's sentence. Because counsel is not

ineffective for failing to raise a non-meritorious objections, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

### 21. Ineffective assistance of counsel – Forensic testing

Petitioner asserts counsel should have requested forensic testing on the pants seized from Ms. Garza's residence. (ECF No. 1 at 15). Petitioner raised this issue in his state habeas action, (ECF No. 13-25), and relief was denied. As previously noted, Petitioner's counsel elicited testimony that the pants retrieved from Ms. Garza's residence did not exactly match the imprint at the crime scene. Additionally, the weight of the other evidence was sufficient to establish a reasonable probability that, but for counsel's alleged failure to have a forensic expert testify regarding the pants, the jury would have returned the same verdict. Because counsel's performance was not deficient and Petitioner has not shown prejudice, the state court's decision denying this claim was not an unreasonable application of *Strickland*.

### 22. Ineffective assistance of counsel– Failure to call Ms. Whitehead

Petitioner contends counsel was ineffective for failing to call Ms. Whitehead as an alibi witness. (ECF No. 1 at 15-16). Petitioner asserts Ms. Whitehead could have provided "some evidence" that Petitioner was in Austin when the alarm sounded at the Tractor Supply in Giddings. (ECF No. 15 at 22). Petitioner also asserts Ms. Whitehead "would have testified" the receipts lost by Detective Spencer "contained information about the person who sold the aluminum coils to [Petitioner] several days prior to the theft." *Id.* Petitioner raised this claim in his state habeas action, (ECF No. 13-25), and relief was denied.

The State's Notice of Other Bad Acts referenced "Matters referred by [Ms.] Whitehead in recorded interview with the Austin Police Department dated [May] 2, 2012 a copy of which having

been previously provided Defendant's counsel." (ECF No. 13-2 at 56). The State also listed Ms. Whitehead as a witness for the State. (ECF No. 13-2). However, Ms. Whitehead was not called as a witness, although the State declared in closing argument:

> He talked about this receipt. He bought these . . . metal coils from somebody, but it got lost. He could have called Jane Whitehead here. He could have called the person that he bought the stuff from . . .

(ECF No. 13-7).[3]

Claims that trial counsel erred by not calling witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *Day*, 566 F.3d at 538. To prevail on an ineffective assistance claim based upon uncalled witnesses, a habeas petitioner must show the witness's testimony would have been favorable. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). Petitioner has not shown Ms. Whitehead's testimony would have been favorable. It is entirely possible counsel made a strategic decision to not call Ms. Whitehead because her testimony would have inculpated Petitioner in other crimes or in the crime of conviction – this would explain the "matters referred" by Ms. Whitehead to law enforcement as referenced in the State's notice to introduce evidence of Petitioner's other bad acts. Accordingly, because it is likely counsel's decision to not call this witness was sound trial strategy, the state court's decision denying this claim for relief was not clearly contrary to or an unreasonable application of *Strickland*.

### 23. Ineffective assistance of appellate counsel

Petitioner's thirty-second through thirty-fifth and his thirty-seventh claims assert appellate counsel should have asserted error with regard to: (1) the jury's "use" of parole laws in determining

---

[3] These are the only references to Ms. Whitehead in the state court record.

his sentence; (2) the insufficient evidence of destruction; (3) the prosecution's loss of exculpatory evidence; (4) Ms. Garza's consent to the search of her residence; and (5) a lesser-included offense instruction. (ECF No. 1 at 16-10). Petitioner asserted these claims of error by appellate counsel in his state habeas action, (ECF No. 13-25 at 50-60), and relief was denied.

To succeed on an ineffective assistance of appellate counsel claim, a petitioner must first show his counsel's performance was objectively unreasonable in failing to raise arguable issues in the appeal. *Dorsey v. Stephens*, 720 F.3d 309, 319-20 (5th Cir. 2013). To establish prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed in that appeal. *Smith v. Robbins*, 528 U.S. 259, 286 (2000). An appellate attorney need not, and should not, raise every non-frivolous claim, but rather should "winnow out weaker arguments" to maximize the likelihood of success on appeal. *Id.* at 288; *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). As previously explained, all of the claims proffered by Petitioner are without merit. Because Petitioner has not shown that the outcome of his appeal would have been different had appellate counsel raised these claims, the state habeas court's denial of this claim was not an unreasonable application of *Strickland*.

### 24. Actual innocence

Petitioner claims he is actually innocent. (ECF No. 1 at 18). A "freestanding" claim of of actual innocence is not a cognizable claim for federal habeas relief pursuant to section 2254. *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013).

### 25. State habeas proceedings

Petitioner contends he was denied due process of law during his state habeas proceedings. (ECF No. 15 at 27). A claim asserting the denial of due process during state habeas corpus

proceedings is not cognizable in a section 2254 action. *Kinsel v. Cain*, 647 F.3d 265, 273-74 & n.32 (5th Cir. 2011).

## CONCLUSION

Petitioner has not established cause for or prejudice arising from his procedural default of some of his federal habeas claims. With regard to the claims which were properly exhausted in the state courts, Petitioner has not established the state court's denial of relief was contrary to or an unreasonable application of federal law.

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of the section 2254 petition, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985).

**SIGNED** on January 23, 2019.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE