IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MARC WYATT,
                Petitioner,

-vs-
                                         CAUSE NO.:
                                         AU-17-CA-00122-SS
LORIE DAVIS,
                Respondent.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Marc Wyatt's Application for Writ of Habeas Corpus [#1], the United States Magistrate Judge's Report and Recommendation [#18], and Wyatt's Objections [#24] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

**I.    Factual Background**

On April 26, 2012, Eugene Fitzpatrick, a manager at a Tractor Supply Company store in Giddings, Texas, arrived at work and noticed the air conditioning was not cooling the building. Resp. [#12] at 6. Later that day, Fitzpatrick looked up at the store's roof where the air conditioning units were located and noticed the units appeared to be damaged. *Id.* at 6–7. He then accessed the roof to investigate the damage and found that someone had removed aluminum coils and copper tubing from the units. *Id.* at 7. The night before, Fitzpatrick had received an alert from the store's security system indicating something was amiss. *Id.* at 6. Fitzpatrick concluded someone had stolen the coils and tubing and reported the crime to the Giddings police department. *Id.* at 7.

1



Police officers Jimmy Webber and Landis Lehman and detective Steve Spencer arrived to investigate the scene, where they discovered foot prints, drag marks, screws, and pieces of sheet metal. *Id.* They also found a boot print on a wall near a pole running up the side of the building, the impression of the sole of a shoe, and the imprint of the seat of a pair of jeans. *Id.* Shortly after photographing the scene, Spencer, Webber, and Landis returned to the police station. *See id.* at 8.

At the station, Spencer spoke to Officer Derick Griffin, a patrol sergeant who had been on duty near the store during the early hours of April 26. *Id.* at 7. Griffin told Spencer that he had observed a truck parked near the store at 2:36 a.m. *Id.* at 7–8. Griffin had approached the truck, which was unoccupied, and noted that the hood felt somewhat warm, indicating that the vehicle had been recently used. *Id.* at 8. Griffin also observed a set of power tools inside the truck. *Id.* Spencer subsequently discovered the truck's owner was Petitioner Marc Wyatt. *Id.*

Further investigation revealed Petitioner had used the truck to transport aluminum and copper, which Petitioner sold to a scrap metal yard in Austin, Texas at 9:13 a.m. on April 26. *Id.* at 8, 10. After obtaining photographs of the metal sold and speaking to the distributor of the air conditioning units about what exactly was taken, Detective Spencer believed the metal Petitioner sold was consistent with the parts that had been removed from the store's air conditioning units. *Id.* at 8. Spencer concluded Petitioner stole the parts and obtained an arrest warrant for Petitioner. *Id.*

Spencer interviewed Petitioner following his arrest. *Id.* at 9. During the interview, Petitioner admitted he owned the truck Griffin had observed in the early morning of April 26. *Id.* According to Petitioner, the truck was parked near the store because he had run out of gas, and the truck was empty because Petitioner had walked to a nearby gas station to buy more gas. *Id.* The manager of the gas station, however, stated that she did not see anyone buy gas, and there

2

were no records of any credit-card transaction at any of the pumps near the time Petitioner claimed to have purchased the gas. *Id.* The manager further stated that she reviewed the security footage for the gas station on the night of the crime and Petitioner did not appear in the security footage. *Id.* Captain Earl Pence of the Giddings police department also watched the security footage and agreed that Petitioner did not appear in it. *Id.*

As part of his investigation, Detective Spencer obtained a pair of jeans and a pair of shoes belonging to Petitioner from the residence of Elisa Garza, Petitioner's then-girlfriend. *Id.* Spencer compared the tread on Petitioner's shoes and the seat on Petitioner's jeans to the imprints left at the crime scene and concluded that the imprints were consistent with Petitioner's shoes and jeans. *Id.* Spencer later submitted the shoes and photographs of the prints left at the crime scene—but not the jeans—to the crime lab, where a forensic scientist determined that some of the shoe prints left at the crime scene could have been made by Petitioner's shoes or some other shoe with a similar tread design. *Id.* at 9, 11.

The Giddings police department also interviewed Cleofas Salas, an employee of the scrap yard that purchased the aluminum and copper sold by Petitioner, and Mike Stephens, an employee of the company that built the store's air conditioning units. Salas confirmed that Petitioner sold aluminum and copper to the scrap metal yard and stated that he believed the metals sold by Petitioner came from air conditioning units. *Id.* at 10. Stephens told the police that he believed the metals Petitioner sold on April 26 were taken from the store's air conditioning units and noted that the weight of the metals removed from the units was nearly identical to the combined weight of the metal Petitioner sold to the scrap metal yard. *Id.*

## II. Procedural History

On June 8, 2012, Petitioner was indicted on a charge of criminal mischief causing a pecuniary loss of $20,000 to $100,000. *Id.* at 5; *see also* R. & R. [#18] at 4. "For enhancement purposes, the indictment also alleged two prior felony convictions for felony theft and burglary of a habitation." Resp. [#12] at 5. At a pretrial hearing, where Petitioner was represented by counsel, the State extended a plea offer of twenty years imprisonment, which Petitioner rejected. State R. [#13-4] at 4–8.

At trial, Petitioner did not testify in his defense. Pet. [#1] at 3. At the close of the State's case, Petitioner's counsel moved for a directed verdict, which the trial court denied. State R. [#13-7] at 167. The jury found Petitioner guilty of criminal mischief and found the enhancement paragraphs to be true. Resp. [#12] at 5. Consistent with this verdict, the jury sentenced Petitioner to eighty years in prison and assessed a $5,000 fine. State R. [#13-26] at 90. The trial court further ordered Petitioner to pay $40,995.61 in restitution. *Id.* at 99.

After Petitioner was sentenced, "Petitioner's trial counsel withdrew, and appellate counsel was appointed." R. & R. [#18] at 5; *see also* State R. [#13-26] at 95. In his appeal to the Third Court of Appeals, Petitioner argued there was insufficient evidence to support the finding that the value of the damaged property was greater than $20,000. R. & R. [#18] at 5. The appeals court disagreed and affirmed the jury's verdict. *Wyatt v. State*, No. 03-13-00307-CR, 2014 WL 7475488, at *1 (Tex.App.—Austin Dec. 19, 2014, pet. ref'd) (mem. op.). The Texas Court of Criminal Appeals—Texas's court of last resort for criminal cases—refused Petitioner's request for discretionary review. State R. [#13-1].

On December 8, 2015, Petitioner filed a state habeas petition. *See* State R. [#13-25] at 6–119; *see also* R. & R. [#18] at 5. The Court of Criminal Appeals denied relief without written

4

order on November 16, 2016. Resp. [#12] at 6; *see also* State R. [#13-24]. On February 17, 2017, Petitioner filed a petition for federal habeas relief, which was referred to Magistrate Judge Mark Lane pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. On January 23, 2019, Magistrate Judge Lane issued a report and recommendation denying all forty-one of Petitioner's grounds for relief. R. & R. [#18]. Petitioner timely filed objections to twenty-five of the Magistrate Judge's findings. Objs. [#24]. These pending objections are ripe for review.

## Analysis

### I. Legal Standard

Under 28 U.S.C. § 636(b)(1), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." The district court's standard of review of a report and recommendation depends on whether a party files written objections. A district court reviews *de novo* those portions of the report and recommendation to which a party specifically objects. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). The district court is not required to reiterate the magistrate judge's findings and conclusions, *see Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (per curiam), and it need not consider objections that are frivolous, conclusive, or general in nature. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Furthermore, a petitioner "d[oes] not raise a factual objection by merely reurging arguments contained in the original petition." *Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993).

## II. Application

Petitioner asserts twenty-five objections to the Magistrate Judge's report and recommendation. Four of these objections concern claims that were procedurally defaulted because Petitioner failed to exhaust his available remedies, while the remaining objections concern properly exhausted claims. In light of these objections, the Court has undertaken a *de novo* review of the entire case file.

The Court first addresses the objections related to Petitioner's procedurally defaulted claims before turning to the remainder of Plaintiff's objections.

### A. Procedurally Defaulted Habeas Claims

The Magistrate Judge determined Petitioner's seventeenth, nineteenth, thirty-sixth, thirty-eighth, and thirty-ninth claims for relief were not exhausted either because they were based on different legal theories from those advanced in state court or because they were not raised at all in state court. R. & R. [#18] at 9–10.[1] The Magistrate Judge denied each of Petitioner's unexhausted claims because Petitioner did not show cause for his failure to raise these claims in state court or actual prejudice resulting from this failure and because Petitioner did not show that failing to address the merits of his claims would result in a fundamental miscarriage of justice. R. & R. [#18] at 9; *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (describing the circumstances under which federal habeas relief may be granted on unexhausted claims). Although Petitioner objects to the Magistrate Judge's denial of most of these claims, Objs. [#24] at 1–2, he has not shown cause for why these claims were not raised during state habeas

---

[1] In his report and recommendation, the Magistrate Judge mis-numbered two of Petitioner's claims. First, the Magistrate Judge labeled Petitioner's claim that his appellate counsel failed to challenge a ruling that limited cross-examination of Officer Griffin as Petitioner's thirty-second claim, when in fact it was his thirty-sixth claim. *Compare* Appl. [#1] at 16, *with* R. & R. [#18] at 8–9. Second, the Magistrate Judge labeled Petitioner's claim that his appellate counsel failed to argue for reversal because the jury saw Petitioner in restraints as Petitioner's thirty-fourth claim, when in fact it was his thirty-ninth claim. *Compare* Appl. [#1] at 17, *with* R. & R. [#18] at 9. Petitioner repeated these errors in his objections. *See* Objs. [#24] at 1–2.

proceedings, and he has not made the "persuasive showing" of factual innocence necessary to support a claim for a fundamental miscarriage of justice. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner has therefore failed to demonstrate that his claims fall within one of the exceptions to the general rule barring federal habeas relief on unexhausted claims. *See Coleman*, 501 U.S. at 750. The Court thus concurs with the Magistrate Judge's denial of these claims.

### B. Exhausted Habeas Claims

The Magistrate Judge denied Petitioner's first claim for relief alleging he was denied timely appointment of counsel. R. & R. [#18] at 9–10. Petitioner objected to these findings as contrary to Texas Code of Criminal Procedure § 26.04, which governs the procedure for appointing counsel in Texas state court. Objs. [#24] at 3. Petitioner's objection, however, is incomprehensible: it fails to explain the relevance of § 26.04 to his objection, to the Magistrate Judge's finding, or to the timing of appointing counsel. *See id.* Moreover, Petitioner's objection fails to show he was not afforded counsel at any critical stage of the proceedings. *See Rothgery v. Gillespie Cty.*, 554 U.S. 191, 212 (2008). The Court thus concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's second claim for relief alleging ineffective assistance of counsel based on Petitioner's trial counsel's failure to inform him the prosecution had offered a term of probation as part of a plea agreement. R. & R. [#18] at 12. As the Magistrate Judge noted, the record demonstrates that probation was never part of a plea offer. *See* State R. [#13-5] at 11:6–12:17; *see also* R. & R. [#18] at 12. The Court thus concurs with the Magistrate Judge's denial of this claim.

7

The Magistrate Judge denied Petitioner's fourth claim for relief alleging ineffective assistance of counsel based on Petitioner's trial counsel's failure to call an expert witness. R. & R. [#18] at 13. Petitioner claims—without affidavit proof—that the proposed expert was available to testify and would have done so, describes the expected content of the proposed expert's testimony, and argues this testimony would have shown the units were only damaged, not destroyed. Objs. [#24] at 4. Even assuming Petitioner's unsupported assertions are sufficient to show the proposed expert witness would have testified to the facts detailed in Petitioner's objections, Petitioner acknowledges the effect of the proposed testimony would be to show that "the units were only damaged." *Id.* But as noted by the Magistrate Judge, the jury in Petitioner's trial "was allowed to find Petitioner guilty based on evidence he damaged *or* destroyed the air conditioning units." R. & R. [#18] at 17 (emphasis in original). Accordingly, Petitioner has failed to show the proposed expert testimony would have been favorable to a particular defense. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). The Court therefore concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's fifth claim of relief alleging the police conducted an unconstitutional search and seizure by implying they would arrest Elisa Garza if she did not consent to a search of her residence. R. & R. [#18] at 14. Petitioner argues that because he was never granted a hearing on the legality of the search, he did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court. Objs. [#24] at 5. But "[i]t is the existence of state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's use of those processes, that . . . bars federal habeas corpus consideration" of such claims. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). As

Petitioner does not contend these processes do not exist, the Court concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's sixth claim for relief alleging the prosecution used false evidence when it introduced pants it knew did not belong to Petitioner as evidence against him. R. & R. [#18] at 14. The Magistrate Judge determined this false evidence "was of little inculpatory value" because defense counsel elicited testimony from the detective who produced the pants that patterns on the pants were inconsistent with patterns left at the scene of the crime. *Id.* Petitioner argues this determination relies on a misreading of the record. *See* Objs. [#24] at 6.

The testimony referred to in the Magistrate Judge's report and recommendation was as follows:

> Q. And Detective Spencer, I would ask you to take a close look at these pants. And specifically, that seam there in the middle, does that appear to be a matching seam, as is portrayed in those photos?
>
> A. If my interpretation of what is in the photograph of the seam being from – towards the right pocket, this seam would be towards the left pocket.
>
> Q. Okay. And so would you think that these are those pants that made that print?
>
> A. *If my interpretation of this is correct*, then no.

State R. [#13-7] at 11:1–11 (emphasis added). According to Petitioner, the emphasized phrase "leaves room for conjecture" because "[t]he jury could assume Spencer was indeed looking at the print wrong." Objs. [#24] at 6. But Spencer also noted it was unlikely an expert would be able to say conclusively the jeans matched the pattern left at the crime scene, *see* State R. [#13-6] at 172:6–12, and in closing arguments Petitioner's counsel reiterated Spencer's admission that the pants were inconsistent with the patterns at the crime scene. *Id.* [#13-7] at 189:19–21. The record therefore demonstrates the pants were not material because it is not reasonably likely they

9

affected the jury's verdict. *See Goodwin v. Johnson*, 132 F.3d 162, 185 (5th Cir. 1998) ("False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.") (quotation omitted). Thus, the Court concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's seventh claim for relief alleging Petitioner was denied his right to self-representation. R. & R. [#18] at 15. Petitioner contends that he was represented by an improperly appointed attorney, which, according to Petitioner, is equivalent to having "no counsel at all." Objs. [#24] at 7. But Petitioner does not address the fact that he waived his request to represent himself by appearing with counsel at a pre-trial hearing. *See* R. & R. [#18] at 15; *see also Brown v. Wainwright*, 665 F.2d 607, 611 (Former 5th Cir. 1982) (en banc) (explaining a defendant's right to self-representation "may be waived through [the] defendant's subsequent conduct indicating he is vacillating on this issue or has abandoned his request altogether"). The Court thus concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's tenth claim for relief alleging the trial court abused its discretion by denying his motion for a directed verdict. R. & R. [#18] at 17. Petitioner argues he was entitled to a directed verdict because the prosecution violated Texas Penal Code § 28.06(a) when it failed to prove either the fair market value of the destroyed property or that the fair market value of the destroyed property could not be ascertained. Objs. [#24] at 9. Petitioner urged this same argument to the Third Court of Appeals, *see* State R. [#13-16] at 20, which determined the evidence presented at trial was sufficient to establish pecuniary loss under state law. *See Wyatt*, 2014 WL 7475488, at *1–2. This Court defers to the state appellate court's interpretation of state law, *see Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004), and accordingly concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's eleventh claim for relief alleging Petitioner was deprived of his right to a fair trial because a detective investigating his case lost allegedly exculpatory receipts. R. & R. [#18] at 18. Petitioner objects this claim should not have been denied because the receipts were exculpatory. Objs. [#24] at 10. However, Petitioner fails to show the detective lost the receipts in bad faith as required by *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The Court thus concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's twelfth claim for relief alleging the State introduced evidence without establishing the proper chain of custody. R. & R. [#18] at 19. Petitioner contends the Magistrate Judge erred in this conclusion, but his objection fails to raise any additional argument that had not been considered by the Magistrate Judge in his report and recommendation. Because Petitioner has simply reurged arguments offered in his petition, he has failed to raise a proper objection to this finding. *See Edmond*, 8 F.3d at 293 n.7.

The Magistrate Judge denied Petitioner's thirteenth claim for relief alleging Petitioner's due process rights were violated when the prosecution presented altered evidence. R. & R. [#18] at 19–20. Petitioner asserts the Magistrate Judge misstated expert testimony related to the purportedly altered evidence, thereby understating the effect the evidence had on the verdict. *See* Objs. [#24] at 11. Having reviewed the record, the Court agrees with the Magistrate Judge's assessment that the evidence likely did not have a substantial effect on the jury's verdict. *See* State R. [#13-7] at 165:16–21 ("Q. You cannot conclusively say that they are the same shoes? A. They are similar in tread design and size and/or – to the known shoes. Q. It is not a positive identification? A. No, it is not a positive identification."); *see also Bigby v. Dretke*, 402 F.3d 551, 563–64 (5th Cir. 2005) (requiring a petitioner to show the allegedly altered evidence had a

"substantial and injurious effect" in determining the verdict). Consequently, the Court concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's fourteenth claim for relief alleging the prosecution failed to properly preserve allegedly exculpatory surveillance footage from a gas station and Petitioner's fifteenth claim for relief alleging the prosecution failed to disclose this allegedly exculpatory evidence. R. & R. [#18] at 20. Petitioner argues the Magistrate Judge's conclusion that the surveillance footage was not exculpatory was in error because "[i]f Petitioner was indeed on the video at the time of the first alarm, then based on the theory of the Magistrate Petitioner was in two places at the same time." Objs. [#24]. But this is simply another way of saying the surveillance footage was exculpatory because it corroborated Petitioner's alibi, which is the same argument the Magistrate Judge considered and rejected in his report and recommendation. Because Petitioner has simply reurged arguments offered in his petition, he has failed to raise a proper objection to this finding. *See Edmond*, 8 F.3d at 293 n.7.

The Magistrate Judge denied Petitioner's twenty-eighth claim for relief alleging the trial court erred by ordering him to pay restitution based on an improper cost estimate. R. & R. [#18] at 23. Although Petitioner acknowledges restitution orders may not be challenged in a habeas petition, he asserts, without any support or explanation, that "[t]his case is an exception to that rule." Objs. [#24] at 14. As Petitioner has failed to explain why his case presents an exception, the Court adheres to the general rule prohibiting challenges to restitution orders in habeas proceedings and concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's twenty-ninth claim for relief alleging his trial counsel's performance was deficient because he failed to object to the jury's use of parole laws when assessing the sentence. R. & R. [#18] at 24. Petitioner objects that the Magistrate Judge

considered only one question related to the use of parole laws in assessing sentence when the jury submitted two such questions. Objs. [#24] at 14–15. The record demonstrates, however, that in response to the second question the jury was instructed to consider only the evidence that was presented in court. *See* State R. [#13-8] at 28:4–6 ("Question No. 2: When did he get out of prison? Only consider the evidence presented court."). Because juries are presumed to follow such instructions, *see Galvan v. Cockrell*, 293 F.3d 760, 766 (5th Cir. 2002), the Court agrees with the Magistrate Judge's conclusion that "there is no evidence for the allegation that the jury improperly used parole laws when assessing Petitioner's sentence." R. & R. [#18] at 24. Accordingly, the Court concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's thirty-first claim for relief alleging his trial counsel's performance was deficient because he failed to call Lilith Jane Whitehead to testify. *Id.* at 25. The Magistrate Judge found Petitioner failed to show Whitehead's testimony would have been favorable because the record indicated Whitehead's testimony might "have inculpated Petitioner in other crimes or in the crime of conviction." *Id.* at 26. Petitioner contends this finding was in error because Whitehead "did not know of Petitioner's criminal history." Objs. [#24] at 15. Even if Petitioner's claim is true, he has still failed to show that Whitehead's testimony would have been favorable; indeed, Petitioner admits he and Whitehead were involved in a loud and protracted argument on the night of the crime. *See id.* The Court therefore agrees with the Magistrate Judge's determination that counsel's decision not to call Whitehead was likely sound trial strategy and not an example of deficient performance. Accordingly, it concurs with the Magistrate Judge's denial of this claim.

The Magistrate Judge denied Petitioner's third, eighth, ninth, eighteenth, twentieth, and twenty-sixth claims for relief alleging ineffective assistance of counsel based on trial counsel's:

(1) failure to request a lesser-included offense, R. & R. [#18] at 12; (2) failure to request a pretrial evidentiary hearing to exclude evidence, *id.* at 16; (3) failure to request an independent forensic test of evidence, *id.*; (4) failure to object to the prosecutor's reference to facts not in evidence in closing arguments at the sentencing hearing, *id.* at 21; (5) failure to investigate Petitioner's alibi, *id.*; and (6) failure to investigate a witness for the State, *id.* at 23. The Magistrate Judge also denied Petitioner's thirty-second through thirty-fifth and thirty-seventh claims for relief asserting ineffective assistance of counsel based on appellate counsel's failure to assert error with regard to: (1) the jury's use of parole laws in determining his sentence; (2) the insufficient evidence of destruction; (3) the prosecution's loss of exculpatory evidence; (4) Ms. Garza's consent to the search of her residence; and (5) a lesser-included offense instruction. *Id.* at 26–27. Petitioner contends each of these denials were in error, but his objections fail to raise any additional argument that had not been considered by the Magistrate Judge in his report and recommendation. Because Petitioner has simply reurged arguments offered in his petition, he has failed to raise a proper objection to these findings. *See Edmond*, 8 F.3d at 293 n.7.

Finally, the Magistrate Judge denied Plaintiff's sixteenth claim for relief alleging ineffective assistance of counsel for failing to investigate an insurance claim offered at trial, R. & R. [#18] at 17; his nineteenth claim for relief alleging prosecutorial misconduct based on the improper use of hypotheticals during jury selection, *id.* at 8; his twenty-first claim for relief alleging there was insufficient evidence of loss, *id.* at 17; his twenty-second claim for relief alleging the prosecution failed to disclose the "deal" it made with Garza for her testimony, *id.* at 22; his twenty-third claim for relief alleging there was insufficient evidence the units were destroyed, *id.* at 18; his twenty-fourth claim for relief alleging the prosecution withheld a pair of black pants recovered from Garza's residence, *id.* at 22; his twenty-fifth claim for relief alleging

ineffective assistance of counsel for failing to object to the prosecution's use of an insurance claim as evidence of pecuniary loss, *id.* at 18; his twenty-seventh claim for relief alleging ineffective assistance of counsel for failing to challenge the amount of pecuniary loss, *id.* at 18; his thirtieth claim for relief alleging ineffective assistance of counsel for failing to request forensic testing on the pants seized from Garza's residence, *id.* at 25; his fortieth claim for relief alleging actual innocence, *id.* at 27; and his forty-first claim for relief alleging a denial of due process during his state habeas proceedings, *id.* at 27–28. Because Plaintiff did not object to these findings, the Court reviews them for plain error. *See Douglass*, 79 F.3d at 1428–29. Having reviewed the record and the applicable law, the Court concludes the Magistrate Judge did not err in denying these claims.

In sum, the Court, having reviewed the Magistrate Judge's findings and conclusions and finding no error, will accept and adopt the report and recommendation for the reasons stated therein.

Accordingly,

IT IS ORDERED that Petitioner's Objections [#24] are OVERRULED; and

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge [#18] is hereby ACCEPTED AND ADOPTED by the Court.

SIGNED this the 16th day of April 2019.

_/s/ Sam Sparks_
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE